J-A19035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RAPID DEPLOYMENT PRODUCTS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EMERGENCY PRODUCTS + RESEARCH, INC. | : | |
| | : | No. 614 EDA 2020 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered June 29, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2014-04476

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED SEPTEMBER 29, 2021**

Appellant, Emergency Products + Research, Inc. (Defendant), appeals from a judgment entered in favor of plaintiff Rapid Deployment Products, Inc. (Plaintiff) and against it in a breach of contract action following a non-jury trial.  We affirm.

This action arises out of a failed merger between Plaintiff and Defendant in 2013.  Plaintiff and Defendant were both in the business of manufacturing and selling emergency medical service products for use by emergency medical technicians and paramedics.  Trial Court Decision and Order, F.F. ¶¶2-3, 19. In late 2012 or early 2013, the owner of Plaintiff, Thomas Richmond, the

---

[*] Retired Senior Judge assigned to the Superior Court.

president and co-owner of Defendant, Jerold Ramsey, and Plaintiff's executive vice-president, Jason Thompson, met to discuss a possible business arrangement between the two companies based on Plaintiff's strength in sales and Defendant's strength in manufacturing. *Id.*, F.F. ¶¶5, 7, 14, 28-31; N.T., 6/25/18, at 25-27, 144, 147-48. Following additional communications by telephone, a second meeting was held between Richmond, Thompson, Ramsey, and Jim Doherty, the other co-owner of Defendant, at which Plaintiff and Defendant exchanged profit and loss information and agreed to merge the two companies. Trial Court Decision and Order, F.F. ¶¶32-33, 35; N.T., 6/25/18, at 27-31, 34. In this oral agreement, Plaintiff and Defendant agreed that Defendant's manufacturing affiliate would manufacture most of Plaintiff's products, that Plaintiff would act as the marketing arm of the merged company, that payment for all sales of Plaintiff's products would be sent to Defendant, and that Richmond, Thompson and two of Plaintiff's other employees, Julie Palladino, Plaintiff's vice president of sales and marketing. and Justina Sklodowski, would become employees of Defendant. Trial Court Decision and Order, F.F. ¶¶10, 23, 34, 39-43, 50; Trial Court Opinion at 6; N.T., 6/25/18, at 25, 30-33, 66-67, 109. Plaintiff and Defendant also agreed the merged company would have three shareholders, Richmond, Ramsey, and Doherty, with each owning one-third of the combined company. Trial Court Decision and Order, F.F. ¶¶37, 45; N.T., 6/25/18, at 31; Bilardo Dep. at 13-14.

Following this agreement, Plaintiff sent its manufacturing molds to Defendant, Richmond, Thompson, Palladino, and Sklodowski became employees of Defendant, and Richmond began performing sales and marketing work for the combined company. Trial Court Decision and Order, F.F. ¶¶46-50; N.T., 6/25/18, at 29-30, 32-34, 46-47. Plaintiff also advised its customers to send their payments for Plaintiff's products to Defendant and transferred its customer information to Defendant and Defendant invoiced customers for the sales of Plaintiff's products. Trial Court Decision and Order, F.F. ¶¶56-60; N.T., 6/25/18, at 47, 68-71, 76-78. On June 28, 2013, an announcement bearing both companies' logos was sent to all of Plaintiff's and Defendant's customers stating that their CEOs "are pleased to announce a full merger between their respective companies," that "[e]ffective as of July 1, 2013, Rapid Deployment Products ("RDP") will become a trade name of Emergency Products + Research, Inc. ("EP+R") and will serve as EP+R's sales and marketing arm," and that "EP+R will be responsible for manufacturing, procurement, inventory control and order processing." Trial Court Decision and Order, F.F. ¶53; N.T., 6/25/18, at 36-37, 69-70; Plaintiff's Ex. 1. In September 2013, Richmond, the other employees of Plaintiff that Defendant had hired, and Defendant's co-owners Doherty and Ramsey attended a trade show in Las Vegas wearing shirts with the logos of both companies. Trial Court Decision and Order, F.F. ¶61; N.T., 6/25/18, at 39-41, 74. On September 17, 2013, following that trade show, Defendant's president

Ramsey stated in an email to Doherty that "[i]t was apparent that our merger did not confuse our customers - we showed as one (thanks to sales and the outfits.)" Trial Court Decision and Order, F.F. ¶62; Ramsey Dep. at 19-20. In addition, Defendant filed the name "Rapid Deployment Products" as a trade name with a date of first use of July 1, 2013. Trial Court Decision and Order, F.F. ¶66; Amended Complaint ¶9 & Ex. A; Answer & New Matter, Answer ¶9; Bilardo Dep. at 11, 37.

In late 2013, disputes arose between Plaintiff and Defendant. Defendant denied Plaintiff access to the financial information for the combined companies and Defendant had not reimbursed Plaintiff for products sold by Defendant that Plaintiff manufactured with employees paid by Plaintiff or reimbursed Plaintiff for the July and August 2013 salaries that Plaintiff had paid the four employees hired by Defendant. Trial Court Decision and Order, F.F. ¶¶63-64, 69, 72-74, 85-89, 93-95, 110; N.T., 6/25/18, at 42-43, 48-49, 51, 56, 78, 82, 84, 87-89, 92-94, 121, 124, 157; Bilardo Dep. at 28-29; Ramsey Dep. at 24-28; Thompson Dep. at 42-43. Defendant claimed that Plaintiff had failed to provide financial information that Defendant had requested and that Plaintiff was improperly keeping payments that customers had erroneously sent to Plaintiff. Trial Court Decision and Order, F.F. ¶¶80, 84, 90, 108, 114; N.T., 6/25/18, at 157-61, 169-70; Ramsey Dep. at 20-24, 29-30. In January 2014, Defendant terminated the employment of Richmond, Thompson, Palladino, and Sklodowski and immediately rehired Thompson as

its own employee. Trial Court Decision and Order, F.F. ¶¶115-16; N.T., 6/25/18, at 47-48, 50, 87-88, 161; Thompson Dep. at 57-58.

On June 30, 2014, Plaintiff filed this action against Defendant. In its complaint, Plaintiff averred that Plaintiff and Defendant entered into an oral agreement to merge and asserted claims for breach of that contract, estoppel, and return of Plaintiff's financial information that it provided Defendant in the merger. Amended Complaint ¶¶3, 17-22, 24-28, 30-32. Plaintiff sought as damages, *inter alia*, an accounting and recovery of "expenses, income, and any other amounts due and owing Plaintiff earned by Defendant" in the failed merger. **Id.** at 5-7. Defendant in its answer denied that there was an agreement to merge, denied that it owed Plaintiff any monies, and asserted counterclaims for the customer payments that Plaintiff withheld. Answer & New Matter, Answer ¶¶3, 7, 9, 22 & Counterclaims at 5-6.

A bench trial commenced on June 25, 2018, at which Richmond and Palladino testified and Ramsey testified on direct examination. Following that first day of trial, Ramsey's cross-examination was conducted by videotaped deposition and the parties took videotaped trial depositions of three other witnesses: Thompson, Plaintiff's accountant Bilardo, and Jennifer Allen, Defendant's director of accounting. On April 30, 2019, the four videotaped depositions were submitted by the parties to the trial court and incorporated in the record in lieu of further hearings.

On January 16, 2020, the trial court issued a decision and order in which it found that Plaintiff and Defendant had entered into an oral contract to merge their businesses and also held, alternatively, that the parties' conduct established a contract implied in fact to merge the businesses. Trial Court Decision and Order, F.F. ¶¶33-34, 37-38, C.L. ¶¶5-7, 15. The trial court found that Plaintiff substantially complied with the contract and that Defendant breached the contract. *Id.*, F.F. ¶¶46-52, 56-60, 67-75, 80-95, 114-22, C.L. ¶¶6, 24-25. The trial court further found Plaintiff's evidence of the amounts that Defendant owed Plaintiff for sale of Plaintiff's products and unreimbursed expenses credible, awarded Plaintiff $127,404 in damages, and rejected Defendant's counterclaims. *Id.*, C.L. ¶¶28-33 & Order. Defendant filed a timely motion for post-trial relief, which the trial court denied by order entered on February 11, 2020, and judgment was entered on June 29, 2020.

In this appeal,[1] Defendant asserts two claims of error: 1) that the trial court erred in finding a contract to merge the companies and 2) that the trial

---

[1] Defendant's appeal, filed on February 14, 2020, was premature, as no judgment had yet been entered. Because judgment was subsequently entered on June 29, 2020, however, the appeal is timely and is properly before us. Pa.R.A.P. 905 (a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); *Century Indemnity Co. v. OneBeacon Insurance Co.*, 173 A.3d 784, 788 n.1 (Pa. Super. 2017).

court erred in its determination of damages.[2] Our review in this appeal is limited. A judgment entered following a non-jury trial may be reversed only if the trial court's findings of fact are not supported by competent evidence in the record or if the trial court has committed an error of law. *Hornberger v. Dave Gutelius Excavating, Inc.*, 176 A.3d 939, 943 (Pa. Super. 2017); *Boehm v. Riversource Life Insurance Co.*, 117 A.3d 308, 321 (Pa. Super. 2015). The trial court in a non-jury trial is free to believe all, part, or none of the testimony presented at trial, and this Court may not reweigh the evidence or substitute its judgment for that of the trial court. *Linde v. Linde*, 220 A.3d 1119, 1140, 1151 (Pa. Super. 2019); *Ferraro v. Temple University*, 185 A.3d 396, 403 (Pa. Super. 2018). Here, the trial court's finding of a contract and its award of damages are supported by the record and without legal error and Defendant's arguments are essentially nothing more than an attempt to have this Court reweigh the evidence and the credibility of the witnesses.

In its first issue, Defendant argues that no contract to merge the companies was proven because no steps to effectuate the merger or create

---

[2] Defendant lists three issues in the Statement of Questions in its brief. Appellant's Brief at 5-6. The first and third of these issues, however, are in fact, the same issue, whether the trial court erred in finding that the parties entered into a contract to merge their companies, and Defendant addresses these as a single issue in the Argument section of its brief. Accordingly, we likewise address the first and third issues listed by Defendant together as a single issue.

the joint company were taken and the evidence at trial did not prove all of the terms of the agreement.

When the parties have agreed to essential terms and intended them to be binding, a contract is formed, even though they intend to sign a formal document with additional terms at a later date. *Hartman v. Baker*, 766 A.2d 347, 351 (Pa. Super. 2000); *Beaver Dam Outdoors Club v. Hazleton City Authority*, 944 A.2d 97, 103 (Pa. Cmwlth. 2008). For a contract to be binding, the parties must agree to essential terms of the contract that are sufficiently definite for a court to determine whether there is compliance. *United Environmental Group, Inc. v. GKK McKnight, LP*, 176 A.3d 946, 963 (Pa. Super. 2017); *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 783 (Pa. Super. 2006). The fact that the parties' agreement does not spell out all the terms of their intended contract does not invalidate the contract if the parties' intent is clear and capable of being determined and enforced. *RegScan, Inc. v. Con–Way Transportation Services, Inc.*, 875 A.2d 332, 336-37 (Pa. Super. 2005); *Greene v. Oliver Realty Inc.*, 526 A.2d 1192, 1194 (Pa. Super. 1987). The parties' agreement to the contract may be shown by their actions in carrying out terms of the contract. *Mountain Properties, Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. 2001); *Hartman*, 766 A.2d at 351.

The evidence at trial was sufficient to support the trial court's finding that the parties made an oral agreement to merge and to prove that its terms

were sufficiently definite for the agreement to be an enforceable contract. Richmond testified that he as owner of Plaintiff and Defendant's co-owners met and agreed on behalf of their companies that Plaintiff and Defendant would merge and operate as one company and that under this agreement Defendant's manufacturing affiliate would manufacture most of Plaintiff's products, Plaintiff would act as the marketing arm of the merged company, payment for sales of Plaintiff's products would be sent to Defendant, and Defendant would hire him and Plaintiff's three other key employees. N.T., 6/25/18, at 27-34. There was also testimony that Richmond and Defendant's co-owners agreed that the merged company would have three shareholders, who would be Richmond and the two co-owners of Defendant, and that each shareholder would have a one-third ownership of the combined entity. *Id.* at 31; Bilardo Dep. at 13-14.

In addition, Plaintiff introduced evidence that both Plaintiff and Defendant performed in accordance with an agreement to merge the companies. Richmond and Palladino testified that Plaintiff transferred product molds to Defendant's manufacturing facility and transferred its customer information to Defendant, that Richmond and the three other employees of Plaintiff became employees of Defendant, and that Defendant billed customers for sales of Plaintiff's products. N.T., 6/25/18, at 29-30, 32-34, 47, 68-71, 76-77. Evidence was introduced that Plaintiff and Defendant also sent an announcement of "a full merger between their respective companies" to all of

their customers, stating that on July 1, 2013, Plaintiff's name would become a trade name of Defendant, that Plaintiff would serve as Defendant's "sales and marketing arm," and that Defendant would be responsible for "manufacturing, procurement, inventory control and order processing." *Id.* at 36-37, 69-70; Plaintiff's Ex. 1. While Defendant's president Ramsey denied that he agreed to the merger announcement, N.T., 6/25/18, at 171-73, the trial court rejected this testimony as not credible. Trial Court Opinion at 8. Indeed, the record showed that after the merger announcement, Ramsey referred in September 2013 to the parties' arrangement as "our merger" and Defendant made a filing to use Plaintiff's name as a trade name. Ramsey Dep. at 19-20; Bilardo Dep. at 11, 37.

Because there was sufficient evidence to prove that the parties agreed to merge and to the terms of the merger, the facts that no merger documents were filed and that the parties did not complete the creation of a new joint entity go to whether the contract was fully performed and the merger was completed and do not negate the existence of a contract to merge the companies. The trial court's finding that Plaintiff and Defendant entered into a contract to merge is thus supported by the record and it committed no error of law in making this determination.

Defendant also argues that the trial court erred in holding that a contract implied in fact was formed because that theory of liability was not pled in Plaintiff's complaint and contended at oral argument that the trial court did

not find an oral contract and found liability solely on an unpled theory. Contrary to Defendant's assertions, however, the trial court found that the parties entered into an express oral contract. Trial Court Decision and Order at 20-22 & C.L. ¶¶5-7; Trial Court Opinion at 6-7. Its determination that there was a contract implied in fact was an alternative holding, in addition to its separate determination that the parties entered into an express contract. Trial Court Decision and Order at 22-23. Because the finding of an implied contract was only an alternative ground for the trial court's imposition of liability and competent evidence in the record supports the trial court's determination that there was an enforceable oral contract, this claim of error cannot constitute a ground for reversal of the judgment and we therefore need not and do not address this issue. **Wagner v. Waitlevertch**, 774 A.2d 1247, 1254 n.5 (Pa. Super. 2001); **In Interest of J.E.S.**, 529 A.2d 514, 514-15 (Pa. Super. 1987); **Municipality of Mt. Lebanon v. Gillen**, 151 A.3d 722, 727-28 n.5 (Pa. Cmwlth. 2016).[3]

---

[3] At oral argument, Defendant asserted an additional claim that the trial court erred in not finding that Plaintiff breached the parties' contract when it did not turn over to Defendant moneys that customers had paid to Plaintiff after the merger. While a material breach of the contract by Plaintiff would be a defense to Defendant's liability under the contract, **see Linde v. Linde**, 210 A.3d 1083, 1091-92 (Pa. Super. 2019); **McCausland v. Wagner**, 78 A.3d 1093, 1101 (Pa. Super. 2013), Defendant did not raise any issue of breach the contract by Plaintiff in its post-trial motion, its Pa.R.A.P. 1925(b) statement, or its briefs in this Court and asserted with respect to liability only that the trial court erred in finding that the parties entered into a contract. The argument that Plaintiff breached the contract is therefore waived. **Board of**
*(Footnote Continued Next Page)*

Defendant's challenge to the trial court's damages award likewise fails. The damages that the trial court awarded Plaintiff were restitution damages, damages to restore the parties to their position prior to the merger and return to Plaintiff the profits that Defendant made from Plaintiff in the merger. Trial Court Decision and Order, C.L. ¶¶ 26, 30-33. Such damages may properly be sought and awarded for breach of contract. **McCausland v. Wagner**, 78 A.3d 1093, 1102 (Pa. Super. 2013) ("In a breach of contract suit, the plaintiff either may rescind the contract and seek restitution or enforce the contract and recover damages based on expectation") (quoting **Smith v. Brink**, 561 A.2d 1253 (Pa. Super. 1989)) (emphasis omitted). Moreover, Plaintiff's complaint clearly sought such restitution damages. Amended Complaint at 5-7. Defendant challenges only the evidentiary basis for the damages award and does not challenge the type of damages that the trial court awarded.

Defendant's contention that the trial court's damages award is unsupported by the evidence is without merit. The trial court based its calculation of damages on the testimony of Palladino, whom it found credible,

---

**Supervisors of Willistown Township v. Main Line Gardens, Inc.**, 155 A.3d 39, 44 (Pa. 2017) ("Rule 227.1(b)(2) provides that the grounds for post-trial relief must be 'specified in the motion,' and that any grounds not so specified are deemed waived unless leave is subsequently granted upon cause shown to specify additional grounds") (quoting Pa.R.Civ.P. 227.1(b)(2)); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b) s]tatement ... are waived"); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

and the amount of damages that it awarded was supported by Palladino's testimony. Trial Court Decision and Order, C.L. ¶¶28-33; N.T., 6/25/18, at 90-109; Allen Dep. at 25-26. The trial court explained that it found Palladino's calculation more accurate and complete than Defendant's damages witness Allen because Palladino had examined all the invoices and financial information received from Defendant and because Allen did not take into account Defendant's profits from the sales of Plaintiff's products. Trial Court Decision and Order, C.L. ¶29; Trial Court Opinion at 8-9. Defendant's challenge to the damages award is thus, like its claim that the trial court erred in finding liability, an attempt to have this Court reweigh the evidence and overrule the trial court's credibility findings.

As the trial court's liability findings and damages award are supported by evidence introduced at trial and Defendant has not shown that the trial court committed any error of law, we affirm the trial court's judgment in this case.

Judgment affirmed.

*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/29/2021*